### WILLIAM McARTHUR *vs.* W. S. DRYDEN.

Opinion filed April 27th, 1897.

**Verdict—Contrary to Evidence.**

> A verdict that must be either without support in the testimony or contrary to the instructions of the court cannot stand.

**Contract for Benefit of Third Person—Consideration.**

> Section 3840, Rev. Codes, which declares that "a contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it," presupposes a valid contract between the parties that rests upon sufficient consideration.

Appeal from District Court, Walsh County, *Sauter*, J.

Action by William McArthur against W. S. Dryden and the Monarch Elevator Company. Dismissed as to the elevator company. On appeal to the District Court, judgment rendered for plaintiff, and defendant appeals.

Reversed.

*John H. Fraine* and *Cochrane & Feetham*, for appellant.
*Phelps & Phelps*, for respondent.

BARTHOLOMEW, J. This action was commenced in justice court. It was originally brought by plaintiff against the defendant Dryden and the Monarch Elevator Company. On trial in justice's court the action was dismissed as to the elevator company. Plaintiff obtained judgment against the defendant Dryden. Dryden appealed to the District Court, where the case was again tried to the court and a jury, resulted in a verdict for plaintiff. Motion for a new trial was overruled, and this appeal is taken from the order of the court denying a new trial. There is a large assignment of errors, of which we shall consider but two: First, that the verdict was contrary to law; and, second, that the testimony was insufficient to sustain the verdict.

The action arose out of the following facts: During the fall of 1895, plaintiff, McArthur, was operating a threshing machine, and

threshed grain for one William Henry, amounting to the sum of $286.52. For this sum plaintiff claimed and filed, as he alleges in his complaint, a thresher's lien on the grain so threshed. This lien was perfected on the 22d day of October, 1895. The defendant Dryden was at that time the agent of the Monarch Elevator Company, a corporation, and engaged in operating the elevator of said corporation at the village of Cashel, in Walsh county. That portion of the complaint that seeks to fasten liability upon Dryden is in the following language: "That on or about the 15th day of November, 1895, there was still due and owing to the plaintiff herein, upon said threshing account, by said William Henry, the sum of ninety-three ($93) dollars. That prior thereto, and after said threshing was completed, the said William Henry had delivered to the defendant W. S. Dryden a large part of said grain, and said Dryden had placed the same in the elevator of the defendant Monarch Elevator Company, at Cashel, North Dakota, for the purpose of selling the same to said Monarch Elevator Company. That the defendant W. S. Dryden during all the times herein mentioned was, and still is, the agent, at said town of Cashel, for said Monarch Elevator Company, for the purpose of transacting its business there, and that he personally and individually claimed an interest in said grain in the nature of a seed lien upon the same for certain wheat and barley which he had personally and individually sold and delivered to said Henry in the spring of 1895, for the purpose of sowing the same on said land for the crop of 1895, and the same was so sown by said Henry. That on or about said 15th day of November, 1895, and while said sum of ninety-three ($93) dollars was still owing by said Henry to the plaintiff herein upon said threshing account, the plaintiff herein was at said town of Cashel with said William Henry, and was endeavoring to obtain from him payment of said balance. They together went to said W. S. Dryden, to have the same adjusted, and paid from the proceeds of said grain. That said Dryden then had due knowledge, notice, and information of the existence of said·lien claimed by plaintiff for threshing said

grain, and at the joint request of the plaintiff and said Henry he then and there promised, agreed, and undertook, both in his own behalf and on behalf of said Monarch Elevator Company, to pay to the plaintiff the said sum of ninety-three ($93) dollars from the proceeds of said grain and more of the same grain which was thereafter to be delivered to said Dryden by said Henry; and that said Dryden did receive personally and individually the pro-ceeds of said grain." It further alleges that Henry thereafter delivered grain to Dryden to the amount of more than 600 bushels, and that the said defendant failed to pay for said grain, or any part thereof, except the sum $25. It will be noticed that the action is based upon the alleged promise of Dryden to pay the debt of Henry. Confessedly, this promise was not in writing. In charging the jury, the court said: "Now, gentlemen of the jury, in actions of this kind the statute provides that a promise to answer the obligation of another in any of the following cases is deemed an original obligation of the promisor: First, when the promise is either by one who has received property of another upon an undertaking to apply it pursuant to such promise, or by one who has received a discharge from an obligation in whole or in part in consideration of such promise." The court then gave the jury also the second and third subdivisions of § 4629, Rev. Codes, which need not be quoted here. The court then proceeded: "When a promise is made for the obligation of another by one who has received property of another upon an undertaking to apply it pursuant to such promise, it need not be in writing. But the property must be received by the individual sought to be recovered against. If Mr. Dryden received property as an indi-vidual in his own behalf, and agreed from that property to pay the debt of Mr. McArthur, then he can be held." Further on in the charge the court said: "You will notice, gentlemen of the jury, that in the making of the promise it is necessary that the pro-perty should have been received prior to the making of the promise by Mr. Dryden, in the event you find for plaintiff." The instructions also covered the thought that, if Mr. Dryden held

money belonging to Henry in his capacity as an individual, then he would be liable in the action, provided he made the promise in his individual capacity. The correctness of these instructions upon these points is not before us. They announce the law of the case, which the jury was bound to follow.

Whether or not there was any wheat in the elevator belonging to Henry at the time the plaintiff and Henry had their conversation with defendant Dryden is a matter in dispute in the testimony. It depends upon the date of this conversation. If held on the 28th of October, as Dryden testifies, it is clear that there was no such grain in the elevator. If, on the other hand, the conversation took place about the 15th of November, as plaintiff and Henry testify, then there was quite an amount of grain in the elevator belonging to Henry. But it is clear that any grain so in the elevator had been delivered by Henry to the elevator company, and not to Dryden as an individual. This is true, notwithstanding the fact that Henry testifies in a general way that Dryden was the party he was dealing with. For all grain delivered at the elevator, storage checks were issued, and delivered to Henry. These storage checks were all signed by the elevator company, by Dryden as agent. These checks were all introduced in evidence, and cover all grain delivered by Henry at said elevator after October 31, 1895, and the evidence is undisputed that for all grain delivered prior to that time Henry was paid in cash at the time of delivery. It follows, then, that if, in reaching their verdict, the jury held that the grain so delivered by Henry was delivered to Dryden as an individual, and not to the elevator company, their holding had no support whatever in the evidence, and should have been set aside. If, on the other hand, they reached the conclusion that the grain had been delivered to the elevator company, but nevertheless returned a verdict against the defendant Dryden, then such verdict was directly contrary to the instructions of the court, by which the jury had been told that Dryden would not be responsible to plaintiff unless such grain had been delivered to and received by him as an indi-

vidual. If such was their verdict, the verdict should have been
set aside, as contrary to the instructions of the court. In this
court respondent makes the claim that this action could be main-
tained, and the verdict can be supported, under § 3840, Rev.
Codes, which reads: "A contract made expressly for the benefit
of a third person may be enforced by him at any time before the
parties thereto rescind it." This well-established principle of law
voiced by our Code cannot, we think, be brought to plaintiff's
aid in this case for several well-defined reasons: First, We
deem it clear that if Dryden made any promise or agreement to
pay Henry's bills to plaintiff, he did so in his capacity of an
agent, meaning and intending to pay the same out of the money
belonging to the elevator company which might become due
from the elevator company to Henry by reason of the delivery
already made by Henry of wheat to the elevator company. It is
clear to us that none of the parties entertained the belief at the
time the arrangement was made that Dryden had any thought of
binding himself individually. Dryden himself denies any such
promise, either as an individual or as an agent, and McArthur
swears that at the time the arrangement was made Dryden stated
that he was just out of money; but, if they would wait until the
train came in, he would pay them the money. This McArthur
declined to do, stating that he had not time to wait; whereupon
he says Dryden told him that he had some money of his own, and
would pay him with that, if he (McArthur) would wait until
Dryden had time to go for it. This evidence of McArthur clearly
shows that it was understood that the money that was to be paid
was the money of the elevator company, and that Dryden's offer
to substitute his own money was only made for McArthur's con-
venience, and not because Dryden was liable as an individual.
Of course, if Dryden made the promise only in the capacity of an
agent, the action cannot be maintained against him as an individ-
ual. But if it be held that Dryden entered into the contract in
his individual capacity, then the contract must fail for want of
consideration. Section 3840, above quoted, contemplates a con-

tract resting upon a present consideration passing between the two contracting parties, and with which the third party has no connection. One of the most common instances of such a contract arises when a mortgagor of real property sells the same, and the grantee, as a part of the consideration, promises and agrees with the mortgagor that he will pay the mortgage debt. Here the conveyance of the property furnishes the consideration for the grantee's promise, and the mortgagee may maintain an action against him. He becomes the principal debtor, and, while the mortgagor is not released, yet, as to the grantee, he stands in the position of a surety. *Moore* v. *Booker*, 4 N. D. 543, 62 N. W. Rep. 607. In the case at bar, as we have seen, Dryden never received any consideration to support an individual promise. He had not then or afterwards any wheat belonging to Henry in his possession in his individual capacity. Nor was the arrangement a novation, for the manifest reason that Dryden owed no obligation to Henry that could be extinguished by assuming an obligation to McArthur. But it is said that when the wheat was sold the money came into Dryden's hands for Henry, and he was bound to pay McArthur out of such money. The answer to this position is the fact that the money was the money of the elevator company, and came into the hands of Dryden as the agent of such company. With it he was bound to extinguish the obligation of the elevator company to Henry, and could not divert it to the extinguisment of his individual obligation to McArthur. On no theory within the record can we sustain this verdict. There must be a new trial.

Reversed. All concur.